**UNITED STATES of America,**
**Plaintiff,**

v.

**Gary J. MAJOR and Nancy Major, Defendants.**

**Case No: 8:14-cv-2309-T-17AEP**

United States District Court,
M.D. Florida,
Tampa Division.

Signed May 9, 2016

Filed 05/10/2016

Michael W. May, Washington, DC, for Plaintiff.

Gary J. Major, Sarasota, FL, pro se.

Walter Graham Bullington, Jr., Norman & Bullington, PA, Tampa, FL, for Defendants.

Nancy Major, Sarasota, FL, pro se.

## ORDER GRANTING GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

### ELIZABETH A. KOVACHEVICH, UNITED STATES DISTRICT JUDGE

This cause came before the Court pursuant to the *Motion for Summary Judgment* (Doc. No. 35) (the "**Motion**") and the *Supplemental Declaration of Daisy Montanez* (Doc. No. 38) (the "**Supplement**") filed by the Plaintiff, the United States of America (the "**Plaintiff**" or "**Government**"), the responses (Doc. No. 36, 37, 41, & 42) (the "**Responses**") filed by the Defendants, Gary J. Major ("**Major**") and Nancy Major (the "**Defendants**"), and the reply (Doc. No. 45) (the "**Reply**") filed by the Government. For the reasons set forth below, the Motion is **GRANTED.**

## I. Introduction

This case arises out Major's decision, in the mid-1990s, to transfer substantially all of his assets into various trusts, and to stop filing federal income tax returns or paying taxes on his business income. Major claims to have made those decisions based on advice he received from an attorney named Paul Emerson. Specifically, Major claims that Mr. Emerson advised him that so long as his assets remained in trust, he had no obligation to file federal income tax returns, or to pay federal income tax on his business income.

Approximately ten years later, the Internal Revenue Service (the "**IRS**") began investigating Major for engaging in a tax avoidance scheme.. While Major initially refused to cooperate with the IRS' investigation, he ultimately acquiesced and late-filed tax returns for the years of 2001 through 2006 on February 5, 2008. The late-filed tax returns reflected an outstanding balance attributable to income earned by Major's computer repair business, Doctor Computer, during the referenced timeframe. The IRS subsequently reviewed Major's late-filed returns, and determined that Major had understated his income from Doctor Computer. Major responded by petitioning the United States Tax Court to re-determine the amount of the proposed deficiency, and ultimately stipulated to an agreed deficiency of approximately $87,140.00, plus interest, penalties, and other amounts.

Rather than pay the deficiencies reflected in the late-filed returns (and later stipulated to in the Tax Court), Major

withdrew approximately $80,000.00 from his trusts and purchased four $20,000.00 cashier's checks. Shortly thereafter, Major then recorded a deed purporting to transfer his interest in his home (the "**Sarasota Property**") to him and his wife as tenants by the entirety. Later, after the IRS commenced this action to foreclose its tax lien, Major filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The only creditor listed in Major's bankruptcy schedules was the IRS.

With this background in mind, the issues raised by the Motion and Responses are whether: (1) the tax assessments established by the decision of the Tax Court are valid; (2) if so, whether Major's tax obligations were discharged in his Chapter 7 bankruptcy case; (3) if not, whether the Government is entitled to foreclose its outstanding tax liens against Major's property, including his interest in the Sarasota Property; and (4) if so, whether Major's purported transfer of the Sarasota Property to him and his wife as tenants by the entirety is avoidable as a fraudulent transfer. Having reviewed the undisputed facts and record evidence, the Court believes there are no genuine issues of fact that preclude summary judgment as to each of the foregoing issues. Even drawing all reasonable inferences in favor of Major, the undisputed facts and record evidence demonstrate that (1) Major owes $162,063.21 in outstanding taxes for the years of 2002 through 2006; (2) Major has willfully attempted to avoid or defeat paying his outstanding tax obligations, such that his debt for unpaid taxes was not discharged in his Chapter 7 bankruptcy case; and (3) Major's transfer of the Sarasota Property to him and his wife as tenants by the entirety is avoidable as a fraudulent transfer. As a result, the Government is entitled to summary judgment on Counts I and II of the Complaint, and to foreclose its tax liens on Major's property.

## II. Background

The Plaintiff commenced this case on September 15, 2014 by filing a *Complaint* (Doc. No. 1) (the "**Complaint**") against the Defendants. Through the Complaint, the Plaintiff seeks to reduce the tax liabilities owed by Major, for the years of 2001 through 2006 to judgment, and to foreclose federal tax liens against Major's property. The Defendants filed an *Answer to Complaint* (Doc. No. 7) (the "**Answer**") on November 14, 2014.

On January 30, 2015, Major filed a *Suggestion of Bankruptcy* (Doc. No. 13). Thereafter, on April 20, 2015, the Plaintiff notified the Court that the United States Bankruptcy Court for the Middle District of Florida (the "**Bankruptcy Court**") had entered an *Order Granting Motion to Lift Stay* (Doc. No. 17), whereby the Bankruptcy Court authorized the parties to "proceed to an adjudication of all counts raised by the [Plaintiff's] Complaint ... including any defenses available to [Major] pertaining to the dischargeability of his federal income tax liabilities."

On January 15, 2016, Plaintiff filed the Motion, and on February 22, 2016, the Supplement. Through the Motion and Supplement, the Plaintiff contends that, as a matter of law, Major owes $162,063.21 in unpaid income tax liabilities and related interest, and that the Government is entitled to foreclose on Major's property.

On February 3 and April 1, 2016, Major filed the Responses, through which he argues that (1) the stipulated decision of the Tax Court should be set aside because he signed it under duress, (2) any outstanding taxes were discharged in his Chapter 7 bankruptcy case, and (3) he received consideration in exchange for the transfer of the Sarasota Property to him and his wife as tenants by the entirety in the form of

contributions and work his wife provided to him over the course of their marriage. The Government filed the Reply on April 12, 2016.

### III. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The Court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant." *Stein v. Ala. Sec. of State*, 774 F.3d 689, 692 (11th Cir.2014). "The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Id.* (internal quotations omitted). "This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact." *Id.* "A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable factfinder to return a verdict in its favor." *Id.* "If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists." *Id.*

Notwithstanding the foregoing, *pro se* pleadings "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Osahar v. Postmaster Gen. of U.S. Postal Serv.*, 263 Fed.Appx. 753, 761 (11th Cir.2008). However, on summary judgment, a *pro se* plaintiff "must still meet the essential burden of establishing that there is a genuine issue as to a fact material to his case." *Id.* "Furthermore, a *pro se* litigant is subject to the relevant law and

rules of court including the Federal Rules of Civil Procedure." *Day v. Allstate Indem. Co.*, 2014 WL 1158924, at *1 (N.D.Ala. Mar. 21, 2014). Accordingly, "[a] *pro se* plaintiff's allegations or conclusory statements are not by themselves sufficient grounds to deny a motion for summary judgment." *Brown v. U.S. Patent & Trademark Office*, 445 F.Supp.2d 1347, 1355 (M.D.Fla.2006).

### IV. Legal Analysis

#### A. The Government's Assessments for Unpaid Taxes are Valid

Section 6201 of the Internal Revenue Code authorizes the Secretary to "make ... assessments of all taxes (including interest ... and assessable penalties) ... which have not been duly paid by stamp at the time and in the manner provided by law." 26 U.S.C. § 6201(a). Where there is a deficiency between the amount of taxes claimed to be owed by a taxpayer and the amount determined to be owed by the Secretary, and the amount of the deficiency is determined by a final decision of the United States Tax Court, "the entire amount ... shall be assessed and shall be paid upon notice and demand from the Secretary." 26 U.S.C. § 6215.

■ Here, it is undisputed that the United States Tax Court entered a stipulated decision regarding Major's federal income tax deficiencies on April 15, 2010. Pursuant to that agreement, Major and the Government stipulated that for the years of 2001 through 2006, Major owes "deficiencies in income tax" of $87,140.00, additional amounts under I.R.C. § 6651(a)(1) in the amount of $18,754.00, and outstanding penalties of $17,428.00; plus interest. *See* (Major Dep. Ex. 4).[1]

---

1. Due to the passage of time, Major now owes $162,063.21 for assessed but unpaid income

tax liabilities for the years of 2002 through 2006. *See* (Doc. No. 38).

Major does not dispute that he signed the stipulation that resulted in the current outstanding balance of $162,063.21, but claims he did so under duress. (Doc. No. 42, at ¶ 10). In support, Major alleges that (i) he "had no opportunity to confer with or indicate his position to the Tax Court," (ii) the IRS' attorney, Michael Gabor, "did all the talking" at the Tax Court's hearing regarding the settlement, and (iii) "he felt intimidated into believing he had no choice but to acquiesce to the inaccurate stipulation." (Doc. No. 42, at ¶ 10). Upon review, Major's arguments reflect nothing more than general or generic contentions that he felt pressured into signing the stipulation, which are insufficient to establish a claim of fraud, duress, or unconscionability. *See Ross v. Clyde Beatty–Cole Bros. Circus*, 26 A.D.3d 321, 322, 812 N.Y.S.2d 548 (N.Y.App.2006). Due to the absence of any specific evidence of duress or extortion by the IRS, the record does not support a reasonable inference that the IRS' assessments are invalid.

## B. Major's Tax Obligations were not Discharged in his Chapter 7 Bankruptcy Case

Having established that the Government's assessments are valid, the issue becomes whether Major's tax obligations were discharged in his Chapter 7 bankruptcy case. On this point, Section 727(b) of the Bankruptcy Code provides a bankruptcy debtor with a discharge "from all debts that arose before the date of the order for relief." 11 U.S.C. § 727(b). Section 523(a)(1)(C) of the Bankruptcy Code, in turn, states that a "discharge under section 727 ... does not discharge an individual debtor from any debt for a tax ... with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). Read together, Section 727(b) permits debtors to obtain a general discharge of their pre-petition obligations, while Section 523(a)(1)(C) excepts from that discharge any debts for taxes that the debtor willfully attempted to evade or defeat. *See* 11 U.S.C. §§ 727(b) & 523(a)(1)(C).

Pursuant to Section 523(a)(1)(C), the IRS may seek a determination regarding whether a debt for unpaid taxes is excepted from the discharge "*at any time.*" FED. R. BANKR. P. 4007(b) (emphasis added). In fact, the Internal Revenue Service "need not [even] appear and object in the bankruptcy court to be excepted from the discharge under § 523(a)(1)(C)." *Console v. C.I.R.*, 291 Fed.Appx. 234, 237 (11th Cir.2008). "Instead, the IRS may wait until the bankruptcy discharge is invoked as a defense to its collection efforts, and then prove a factual basis for the ... exception." *Id.* Once the issue has been raised, however, the "Government bears the burden to prove, by a preponderance of the evidence, that a particular claim is nondischargeable." *U.S. v. Mitchell (In re Mitchell)*, 633 F.3d 1319, 1327 (11th Cir.2011). This is because "exceptions to the general rule of discharge, such as § 523(a)(1)(C), are to be strictly construed in favor of the debtor." *Id.*

Courts in the Eleventh Circuit use a "two-prong test for determining whether a debtor has willfully evaded his taxes pursuant to § 523(a)(1)(C), which requires proof by the Government that the debtor engaged in (1) evasive conduct with (2) a mental state consistent with willfulness." *Id.*

### 1. Conduct Element

"The government satisfies the conduct requirement when it proves the debtor engaged in affirmative acts to avoid payment or collection of taxes, either through commission or culpable omission."

*Id.* The Government may establish such conduct by citing to evidence that the debtor both failed to (1) pay his income taxes, and (2) file his tax returns. *Id.* Here, it is undisputed that Major failed to timely file income tax returns for the years of 2001 through 2006. It is also undisputed that Major failed to pay any income taxes on income derived from the Doctor Computer business over the same period of time. These undisputed facts indicate that Major engaged in "evasive conduct" by failing to file tax returns or pay taxes on his business income between 2001 through 2006.

■ In response, Major argues that he has always paid federal income tax on his pension income through automatic withholdings. This, according to Major, demonstrates that despite the fact that he failed to timely file federal income tax returns, he nonetheless paid income tax on at least some of his income. Upon review, Major's argument is without merit, as the payment of tax on some, but not all, of a debtor's income is not sufficient to overcome evidence of otherwise evasive conduct. *See Obinwa v. U.S. (In re Obinwa)*, 2012 WL 5555715, at *6 (Bankr.M.D.Fla. Nov. 13, 2012) ("noting that paying a portion of taxes does not justify discharging the remaining tax debt where, as here, other badges of fraud exist to support a denial of discharge under § 523(a)(1)(C)."). Accordingly, upon review, it is the view of this Court that the fact that Major paid taxes through automatic withholdings on some of his income does not create a genuine issue of fact as to whether Major engaged in "evasive conduct" as to his remaining tax obligations under Section 523(a)(1)(C) of the Bankruptcy Code.

### 2. Mental State Element

■ "A debtor acts willfully when the debtor's attempt to avoid tax liability is done voluntarily, consciously or knowingly, and intentionally." *In re Mitchell*, 633 F.3d at 1327. Accordingly, the "required mental state is shown when the Government proves that the debtor: (1) had a duty under the law, (2) knew he had that duty, and (3) voluntarily and intentionally violated the duty." *Id.* "[A] court may find willfulness where certain fact patterns, circumstantial evidence, or other 'badges of fraud' indicate a debtor's intention to evade tax obligations." *In re Obinwa*, 2012 WL 5555715, at *4. "These include ... implausible or inconsistent explanations of behavior," and "the transfer of assets for inadequate consideration while maintaining control of the property," among others. *Id.*

■ Here, it is undisputed that Major had a duty to file returns and pay taxes for the years of 2001 through 2006. It is also undisputed that Major failed to timely file returns or pay income tax on his business income between 2001 and 2006. Thus, the Government is entitled to summary judgment as to the mental state requirement if there is no genuine dispute regarding whether Major *knew* that he had a duty to file returns and pay taxes on his business income. While knowledge of one's duty to pay income tax seems self-evident, Major denies that he was aware of any duty to file returns or pay taxes on his business income between 2001 and 2006. Major primarily bases this contention on (i) advice he claims to have received from an attorney, Paul Emerson, during the mid-1990s, and (ii) what he interprets as acquiescence by the IRS as to his position that Doctor Computer was exempt from the IRS' filing requirements. The Court will address both contentions in turn.

Major claims that he met Paul Emerson at church, and that Mr. Emerson claimed he was an attorney who practiced law in Arkansas. *See* (Major Dep. Tr., at 85:1-10; 144:13-23). According to Major, Mr. Emer-

son told him that he could "put everything" in trust, and that he wouldn't have to file income tax returns for the income of the trust. (Major Dep. Tr., at 79:6-11). Major claims that based on what Mr. Emerson told him, he understood that by establishing the trust, "I no longer work for, live for, me as a person myself, I work for, live for the trust, and the trust would then take care of the beneficiaries of the trust ... [a]nd I basically just became somebody that worked for the trust." (Major Dep. Tr., at 69:5-15). Major claims that he understood that as long as the money in the trust stayed in the trust it didn't belong to him, and that no tax would have to be paid until money was withdrawn from the trust. (Major Dep. Tr., at 71:21–72:2).

Despite believing that his trusts were exempt from the IRS' filing requirements, Major sent the IRS an Application for Employer Identification Number on behalf of Doctor Computer on December 28, 1995. (Major Dep. Ex. 6). On January 8, 1996, the IRS sent Doctor Computer a letter assigning it an Employer Identification Number and advising Doctor Computer to file a Form 1041 by April 15, 1997. (Major Dep. Ex. 6). On January 30, 1996, Major sent the IRS a letter on behalf of Doctor Computer in which he appears to dispute that the trust is required to file a Form 1041. (Major Dep. Ex. 6). In the letter, Major refers to the IRS' letter as being a "vague, unsubstantiated, non-judicial notice." (Major Dep. Ex. 6). The letter goes on to "demand" that the IRS remove "from your system of records the erroneous record that a filing requirement exists" within ten days, and states that "[f]ailure to respond within the ... prescribed time will fully establish the presumption that DOCTOR COMPUTER is not subject to any tax law and has no account and/or filing/reporting requirement(s)." (Major Dep. Ex. 6). On January 30, 1998, after failing to receive any response from the IRS, Major sent another correspondence to the IRS stating that "your failure to respond within the statutorily prescribed time has fully established the presumption that DOCTOR COMPUTER is not subject to any tax law and has no account and/or filing/reporting requirement(s)," and further requested a "written response acknowledging this status." (Major Dep. Ex. 7). Major claims that he never received a response from the IRS in response to either letter and, as a result, believed that Doctor Computer did not have to file tax returns. (Major Dep. Tr., at 77:13-25).

█ If this were the only record evidence of Major's knowledge of Doctor Computer's filing obligations the Court would be inclined to deny the Government's Motion. This is because regardless of how implausible Major's beliefs may appear, determining the sincerity of those beliefs entails a credibility determination that cannot be made at this stage of the pleadings. Importantly, however, the record contains the following additional undisputed facts that bear directly on Major's knowledge of his obligation to pay taxes on Doctor Computer's business income:

First, in 2007, after the IRS notified Major that he was under investigation for engaging in abusive tax avoidance activities, Major sent correspondence to the IRS citing his Fifth Amendment privilege against self-incrimination, and refusing to produce documents except "under protest." (Major Dep. Exs. 14 & 15).

Second, Major late-filed returns for the years 2001 through 2006 on February 5, 2008, which reflected an outstanding balance. By signing and filing the late-filed returns, Major has acknowledged he owed delinquent taxes for the period of 2001 through 2006.

Third, despite having acknowledged that he owes taxes as reflected in the late-filed

returns, Major has yet to voluntarily pay any amount towards the amounts reflected as owed in the late-filed returns.

Fourth, less than one week after submitting the late-filed returns, Major purchased four $20,000.00 cashier's checks for a total of $80,000.00. Major maintained possession of three of those checks until February 11, 2011, at which time he deposited three checks totaling $60,000.00 into a trust account for which Nancy Major was named trustee.

Fifth, in the meantime, on May 11, 2009, Major executed a deed purporting to transfer his interest in the Sarasota Property to him and his wife as tenants by the entirety.

Sixth, after the Government filed this action to foreclose its tax liens in 2014, Major filed a voluntary petition under Chapter 7 of the Bankruptcy Code on January 29, 2015. The only creditor listed on Major's bankruptcy schedules is the IRS.

To summarize, these six undisputed facts demonstrate that (i) Major has failed to cooperate fully in the IRS' investigation of his outstanding tax liabilities; (ii) since as early as February 5, 2008, Major has acknowledged an obligation to pay at least some amount of delinquent federal income tax for the years of 2001 through 2006; (iii) despite acknowledging his obligation to pay delinquent taxes, Major has not voluntarily paid any amount towards the taxes owed for 2001 through 2006; and (iv) rather than satisfy his acknowledged obligations to the IRS, Major has engaged in asset transfers and attempted to discharge his tax obligations through bankruptcy. Taken together, these undisputed facts demonstrate that regardless of any erroneous beliefs Major may have formed in the mid to late 1990s regarding Doctor Computer's filing and tax obligations, Major has "voluntarily, consciously or knowingly, and intentionally" sought to evade or de-

feat paying his taxes since at least February 5, 2008.

In light of the foregoing, much like in the *In re Obinwa* case, "too many undisputed facts exist to make [Major's] innocence plausible." 2012 WL 5555715, at *5. This is true regardless of whether Major relied on the erroneous tax advice he received from Mr. Emerson, as the undisputed facts demonstrate that Major has failed to voluntarily pay any amount towards his acknowledged obligation for income taxes since February 5, 2008; despite having had possession of $80,000.00 in cashier's checks during that same period of time. These facts, coupled with Major's transfer of his interest in the Sarasota Property and his decision to file bankruptcy for the sole purpose of discharging his tax obligations, demonstrate the "badges of fraud" necessary to satisfy the mental state requirement under Section 523(a)(1)(C) of the Bankruptcy Code. Thus, the Government is entitled to summary judgment as to the non-dischargeability of Major's outstanding federal income taxes.

## C. The Government is Entitled to Enforce its Tax Liens against Major's Property

Having determined that the assessments are valid and were not discharged in Major's bankruptcy case, it is now proper to consider whether the Government is entitled to enforce its liens for unpaid taxes against Major's property. According to Section 6321 of the Internal Revenue Code, "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property ... belonging to such person." 26 U.S.C. § 6321. "[T]he lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liabili-

ty for the amount so assessed ... is satisfied." 26 U.S.C. § 6322. Where a debtor does not voluntarily satisfy a federal tax lien imposed pursuant to Section 6321,

> the Attorney General ... may direct a civil action to be filed in a district court ... to enforce the lien of the United States under this title ... or to subject any property ... in which [the debtor] has any right, title, or interest, to the payment of such tax or liability.

26 U.S.C. § 7403(a). In any such action, the

> [C]ourt shall ... proceed to adjudicate ... and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court.

26 U.S.C. § 7403(c).

Here, the record demonstrates that the Secretary assessed taxes against Major on February 25, 2008, March 3, 2008, and April 20, 2009 in the combined amount of $21,351.00, plus interest and penalties. (Doc No. 35-1, at ¶ 8). In addition, the undisputed facts and record evidence demonstrate that the Secretary assessed taxes against Major on June 7, 2010, January 10, 2011, December 3, 2012, and December 24, 2012, in the combined amount of $103,615.00, plus interest and penalties. (Doc No. 35-1, at ¶ 11). It is further undisputed that the Government has demanded that Major pay the outstanding assessments, and that he has neglected or refused to do so voluntarily. (Doc No. 35-1, at ¶ 12). Thus, the Government is entitled to summary judgment that it has enforceable liens against Major's property in the amount of $162,063.21, which represents the current balance of Major's outstanding

tax obligations and interest for the years of 2002 through 2006. (Doc. No. 38).

## D. The Transfer of the Sarasota Property is Avoidable as a Fraudulent Transfer

 Pursuant to Section 726.106 of the Florida Statutes, "[a] transfer made ... by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made ... if the debtor made the transfer ... without receiving a reasonably equivalent value in exchange for the transfer ... and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer." Fla. Stat., § 726.106(1) (2016). "In proving the element of insolvency," the Court may apply a "balance sheet test" under which the debtor is deemed insolvent if the value of his liabilities exceed the value of his assets. *See Ruff v. Vurchio (In re Vurchio)*, 107 B.R. 363, 365 (Bankr.M.D.Fla.1989). As for the reasonably equivalent value element, proof that a transfer was gratuitous, i.e. made for no consideration, is sufficient to show that the debtor did not receive reasonably equivalent value under Section 726.106(1). *See In re Treadwell*, 699 F.2d 1050, 1051 (11th Cir.1983). On this point, transfers of money or property to a family member in exchange for "love and affection" do not constitute reasonably equivalent value. *Id.* Where a creditor succeeds in showing that a transfer satisfies the elements for being a fraudulent transfer under Section 726.106(1), creditors may obtain "[a]voidance of the transfer ... to the extent necessary to satisfy the creditor's claim." Fla. Stat., § 726.108(1)(a).

Here, the undisputed facts and record evidence demonstrate that the transfer of the Sarasota Property to the Defendants, as tenants by the entirety, occurred on May 11, 2009. (Doc. No. 35-1, at ¶ 19). At that time, Major possessed assets with a

maximum value of $228,224.77, and owed liabilities to the IRS in a minimum amount of $218,260.62. (Doc. No. 35, at 16-17). As a result, the transfer of the Sarasota Property, which had a just appraised value of $112,000.00, decreased the maximum value of Major's assets to $116,224.77 "by eliminating all of the equity that had been in [Major's] name alone." *See In re DelCorso*, 382 B.R. 240, 259 (Bankr.E.D.Pa.2007) (holding that the recording of a deed purporting to transfer the debtor's home to her and her husband as tenants by the entirety was a constructively fraudulent transfer because the debtor "received nothing for it, it was to an insider, and because it rendered her insolvent by eliminating all of the equity that had been in [her] name alone."). As a result, Major became insolvent as a result of the transfer of the Sarasota Property, as the amount of his liabilities exceeded the value of his assets by approximately $102,035.85. In addition to rendering him insolvent, the undisputed facts and record evidence demonstrate that Major did not receive reasonably equivalent value in exchange for the transfer of the Sarasota Property, as Major's wife did not provide any consideration for the transfer and so called "marital consideration" is not sufficient to create a genuine issue of fact under Section 726.106(1). *See In re Treadwell*, 699 F.2d at 1051. Thus, the transfer of the Sarasota Property to Major and his wife, as tenants by the entirety, is avoidable as a matter of law.

## V. Conclusion

Accordingly, it is

**ORDERED** that the Motion is **GRANTED**, and the Government is **ORDERED** to submit a proposed form of judgment, consistent with the terms of this order, within fourteen (14) days.

It is further **ORDERED** that Major is liable for unpaid taxes for the years of 2002 through 2006 in the total amount of $162,063.21, which debt is excepted from the bankruptcy discharge in Case No. 8:15-bk-849-MGW under Section 523(a)(1)(C) of the Bankruptcy Code.

It is further **ORDERED** that the Government is entitled to enforce its liens through to a sale of Major's property, including the Sarasota Property, by the proper officer of the Court, and a distribution of the proceeds of such sale according to the findings of the Court.

It is further **ORDERED** that the transfer of the Sarasota Property to Major and his wife and tenants by the entirety is **AVOIDED** pursuant to Sections 726.106(1) & 726.108(1)(a) of the Florida Statutes.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 9th day of May, 2016.